[No. 24850-0-III.   Division Three.   October 25, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. GUYLIN MICHAEL
JOHNSTON, *Appellant*.

2

*David R. Hearrean* (of *Law Office of David R. Hearrean, PS*), for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for respondent.

¶1 KULIK, J. — Guylin Johnston appeals his second degree rape conviction. Mr. Johnston asserts that his right to due process was violated when police instructed a hospital employee to destroy potentially exculpatory evidence, that the trial court erred by failing to hold a competency hearing for the alleged victim, and that he received ineffective assistance of counsel. Where the evidence destroyed is potentially useful, as opposed to material exculpatory evidence, Mr. Johnston must show bad faith by the police to support a due process violation. He has not done so. And his other assertions of error are without merit. We, therefore, affirm.

## FACTS

¶2 Eastern State Hospital is a state psychiatric hospital serving the eastern Washington region. In June 2004, Guylin Johnston was employed as a nurse at Eastern State Hospital. Amanda Managhan was a patient at Eastern State Hospital.

¶3 Ms. Managhan was admitted to Eastern State Hospital for depression-related issues. Mr. Johnston was one of several nurses assigned to watch Ms. Managhan for one-on-one shifts of one hour at a time. During one of these one-on-one sessions, Ms. Managhan and Mr. Johnston were alone in the laundry room while Ms. Managhan was doing laundry. The door to the room was closed, which was against the general safety policies of the hospital.

¶4 As Ms. Managhan was loading clothes into a washing machine, she turned around and saw Mr. Johnston with his pants around his ankles. He forced his penis into Ms. Managhan's mouth and ejaculated. Ms. Managhan was chewing gum. Ms. Managhan immediately spit the gum

into a paper towel and rinsed out her mouth. She put the paper towel containing the gum in the pocket of her pants. This gum was later tested. Traces of both Mr. Johnston's and Ms. Managhan's DNA[1] were found in the gum.

¶5 Later that day, Ms. Managhan told another employee at Eastern State Hospital that she had been molested and identified Mr. Johnston as the offender. The employee notified hospital authorities, who in turn notified the police. Mr. Johnston was charged with second degree rape and indecent liberties.

¶6 Prior to the first trial, the State asked the trial court to determine whether a conflict of interest existed between the law office of Mr. Johnston's defense counsel, Bevan Maxey, and the alleged victim. According to the State, Ms. Managhan consulted with a member of Mr. Maxey's firm to discuss the potential of filing a civil suit against Eastern State Hospital based on the incident that allegedly took place in the laundry room.[2] As part of that meeting, Ms. Managhan told the attorney "all relevant details . . . of her sexual contact with the defendant," as well as other personal details about her physical and mental conditions. Clerk's Papers (CP) at 4.

¶7 Mr. Johnston disputed that the contact between Ms. Managhan and any member of the law firm amounted to an attorney-client relationship. According to Mr. Johnston, "no specific facts surrounding the criminal matter were disclosed." CP at 16. Defense counsel promised to take all measures necessary to ensure that any confidentiality would not be breached during Mr. Maxey's representation of Mr. Johnston.

¶8 The trial court granted the State's motion to disqualify Mr. Maxey as defense counsel. The court denied Mr.

---

[1] Deoxyribonucleic acid.

[2] There appears to have been a factual dispute regarding whether Ms. Managhan spoke to defense counsel, Bevan Maxey, or to defense counsel's brother, Bill Maxey. But the State argued that it did not matter which of the two attorneys had consulted with Ms. Managhan, as the entire firm should be disqualified from defending the case.

Johnston's motion to reconsider the disqualification. Mr. Johnston proceeded to trial with a different attorney, Rob Cossey.

¶9 Mr. Johnston also claims Mr. Cossey and another attorney, Chris Bugbee—who was counsel for Jacqueline Hughes—had worked in the same firm in the past. Ms. Hughes was a witness for the defendant in the first trial. In the retrial, she recanted and testified for the prosecution.

¶10 At the first trial, Mr. Johnston presented evidence that he had been set up by two other employees at Eastern State Hospital: Ms. Hughes and Mike Evans. Ms. Hughes and Mr. Evans were allegedly involved in a sexual relationship. Ms. Hughes testified that Mr. Evans had asked her to meet with Mr. Johnston. Ms. Hughes met with Mr. Johnston and had sex in Ms. Hughes's car.

¶11 Ms. Hughes requested that Mr. Johnston use a condom during sexual intercourse. The condom contained some of Mr. Johnston's semen. Ms. Hughes placed the used condom in a baggie when she got home and placed the baggie in her refrigerator. She then gave this baggie to Mr. Evans. Ms. Hughes testified that the sole purpose of her sexual encounter with Mr. Johnston was to secretly collect his semen.

¶12 Two other employees at Eastern State Hospital testified that they found a baggie wrapped in a paper towel in the laundry room of the hospital, one month after the alleged rape. Both employees testified that the contents of the baggie appeared to be semen. But another employee thought the material looked more consistent with a coffee stain. The hospital notified police of the baggie. The hospital security chief described the contents to the Washington State Patrol (WSP) as appearing like a coffee stain. WSP investigators told the hospital employees to throw the baggie away, and the hospital complied.

¶13 The jury acquitted Mr. Johnston of the charge of indecent liberties but could not reach a verdict on the charge of second degree rape. The trial court declared a

mistrial on the charge of second degree rape and accepted the jury's verdict of not guilty on the charge of indecent liberties. Mr. Johnston was retried on the charge of second degree rape.

¶14 At the second trial, a state forensic analyst testified that she tested the piece of gum that Ms. Managhan placed inside a tissue for DNA. The analyst found traces of Ms. Managhan's and Mr. Johnston's DNA on the gum. There were traces of Mr. Johnston's semen as well. The analyst admitted that there were several items, including articles of clothing, that were not tested.

¶15 One of the State's witnesses, Trooper David Fenn, was unavailable to testify at trial because the trooper was called up for military duty. Mr. Johnston stipulated to Trooper Fenn's unavailability to testify and agreed to let the State read the transcript of Trooper Fenn's prior testimony into the record. However, the court did not want Trooper Fenn's service in Iraq put before the jury because of concern of potential bias. The State had previously made one remark about Trooper Fenn's military service during opening arguments. Specifically, the prosecutor stated that other detectives would be presenting Trooper Fenn's testimony because "Trooper Dave Fenn was shipped off to Iraq." Report of Proceedings at 864. Mr. Johnston did not object to this portion of the prosecutor's opening remarks.

¶16 Ms. Hughes testified at Mr. Johnston's retrial, but her testimony was substantially different from her testimony at the first trial. According to Ms. Hughes, Mr. Johnston had approached her about the case. She asserted that she was actually sexually involved with Mr. Johnston and did not have a sexual relationship with Mr. Evans. Mr. Johnston wanted Ms. Hughes to falsely claim that Mr. Evans requested Mr. Johnston's semen. Her impression was that Mr. Johnston wanted to make it seem that he had been framed by Mr. Evans.

¶17 Ms. Hughes testified that her testimony in the prior trial had been false and claimed that Mr. Johnston had told her what she was supposed to say. Ms. Hughes stated that

she changed her testimony because Mr. Evans was under investigation as a result of Ms. Hughes's testimony at the first trial.

¶18 Mr. Johnston again presented evidence from several employees at Eastern State Hospital regarding the plastic baggie that was found in the laundry room and subsequently destroyed. This evidence included testimony that the substance in the baggie resembled partially-dried semen and testimony that several employees believed what they found could be evidence connected to Ms. Managhan's allegations.

¶19 The jury found Mr. Johnston guilty of second degree rape.

## ANALYSIS

### *Destruction of Evidence*

■ ¶20 This court reviews an alleged violation of the constitutional right to due process de novo. *See, e.g.*, *State v. Cantu*, 156 Wn.2d 819, 831, 132 P.3d 725 (2006).

■ ¶21 The constitutional requirement of due process imposes a duty on the State to preserve and disclose to the defense material exculpatory evidence. *State v. Wittenbarger*, 124 Wn.2d 467, 475, 880 P.2d 517 (1994). Suppression by the State of evidence that is favorable to the defendant violates due process if the evidence is material either to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The State's failure to preserve material exculpatory evidence requires dismissal of the charges against the defendant. *State v. Copeland*, 130 Wn.2d 244, 279, 922 P.2d 1304 (1996). However, this court uses a different test if the evidence at issue is merely potentially useful. *Id.* at 280.

¶22 "[W]here *potentially useful evidence* is concerned, as opposed to *material exculpatory evidence*, no denial of due process will be found unless the defendant shows bad faith

on the part of police."[3] *Id.* This difference in treatment is rooted in part on a general unwillingness of the courts to "'impos[e] on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.'" *Wittenbarger*, 124 Wn.2d at 475 (alteration in original) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988)).

¶23 To qualify as material exculpatory evidence, the evidence must be facially apparent as exculpatory before it was destroyed and the defendant must be unable to obtain comparable evidence by other reasonably available means. *Id.* A showing that the evidence might have exonerated the defendant is insufficient. *Id.*

¶24 In this case, Mr. Johnston had no reasonably available means to obtain comparable evidence. The baggie was the only piece of physical evidence that might have corroborated Mr. Johnston's claim that he was framed for the alleged rape. But this evidence was not facially apparent as exculpatory evidence at the time it was destroyed.

¶25 Although several employees testified that the material in the baggie appeared to be consistent with semen, the material had not been conclusively identified when the baggie was destroyed. There was disagreement between some of the employees as to whether the material appeared to be semen at all. One employee thought the material was a coffee stain. And the baggie was not found until one month after the alleged rape. Based on these facts, the most that could be said of the substance in the baggie was that it was potentially useful to Mr. Johnston's defense.

¶26 It follows then that Mr. Johnston must demonstrate bad faith on the part of police. Although he incorrectly argues that he is not required to show bad faith, Mr.

---

[3] Mr. Johnston cites to two cases for the proposition that good faith or bad faith is irrelevant to this analysis: *State v. Wright*, 87 Wn.2d 783, 557 P.2d 1 (1976) and *State v. Vaster*, 99 Wn.2d 44, 659 P.2d 528 (1983). We note that both cases were subsequently overruled as to this exact holding. *State v. Ortiz*, 119 Wn.2d 294, 303-04, 831 P.2d 1060 (1992).

Johnston also asserts that the WSP acted in bad faith when they instructed a hospital employee to destroy the evidence. According to Mr. Johnston, this conduct was in violation of procedures established for preserving evidence. But this argument is circular, as this court must first assume that the substance was relevant evidence in order to conclude that procedures for the preservation of such evidence had been violated. No other basis is put forth by Mr. Johnston, and no basis is contained in the facts to support a finding that the WSP acted in bad faith.

¶27 Mr. Johnston fails to demonstrate that the evidence was materially exculpatory. If the evidence was potentially useful, Mr. Johnston fails to establish that the WSP acted in bad faith when it advised the hospital security chief to throw away the baggie. Mr. Johnston fails to show that his due process rights were violated because the baggie was thrown away rather than preserved.

*Competency Hearing*

¶28 Whether due process requires that a trial court make sua sponte inquiries into the competency of a witness is a constitutional challenge that this court reviews de novo. *See, e.g., State v. Nelson*, 158 Wn.2d 699, 702, 147 P.3d 553 (2006).[4]

¶29 In Washington, adult witnesses are presumed competent to testify. *State v. Smith*, 97 Wn.2d 801, 802-03, 650 P.2d 201 (1982); RCW 5.60.020; CrR 6.12. An adult witness is incompetent to testify if he or she is of "unsound mind" or appears incapable of receiving and relating accurate impressions of the facts about which they are examined. RCW 5.60.050. The term "unsound mind," in this context, means the "total lack of comprehension or the inability to distinguish between right and wrong." *Smith*,

---

[4] The State asserts that this statutory issue was waived by not raising it on appeal. While we ultimately concur that the issue of Ms. Managhan's competency was waived because Mr. Johnston did not challenge it at trial, the question of whether the court had a duty to make inquiries of its own accord is generally treated as an issue of due process. *See, e.g., State v. Watkins*, 71 Wn. App. 164, 170, 857 P.2d 300 (1993); *Ingram v. State*, 463 N.E.2d 483, 485 (Ind. Ct. App. 1984).

97 Wn.2d at 803. The burden is on the party opposing the witness to show incompetence. *Id.*

¶30 Mr. Johnston contends that the trial court had an independent duty to inquire as to Ms. Managhan's competency to stand trial because of Ms. Managhan's status as a patient at a mental health facility and her known history of mental disorders. In *State v. Watkins*, 71 Wn. App. 164, 170, 857 P.2d 300 (1993), Division One considered whether a trial court has a duty to determine sua sponte whether witnesses are competent to testify even when neither party raises the issue of competency.

¶31 While a witness is incapable of giving testimony if he or she is of "unsound mind," this term refers to those who have "no comprehension at all," not merely those who have a history of mental disorders or with limited cognitive abilities. *Id.* at 171. Evidence of mere treatment for mental disorders is not sufficient in and of itself to demonstrate that a witness is of unsound mind. *Id.* And a trial court does not err when it fails to engage in a sua sponte competency hearing if the record reflects that the witness was "reasonably capable of recalling and recounting the events in question." *Id.*

¶32 In *Watkins*, Division One ultimately concluded that, "absent manifest signs of incompetence," the trial court has no independent duty to "inquire into the competence of witnesses with known mental disabilities." *Id.* at 173. Similarly, in *State v. C.M.B.*, Division One ruled that the trial court is under no obligation to inquire into a witness's competency absent "a challenge by any party to the competency of a witness." *State v. C.M.B.*, 130 Wn. App. 841, 844, 125 P.3d 211 (2005).

¶33 While the opinions in *Watkins* and *C.M.B.* are not binding on this court, they are persuasive authority. Moreover, these decisions reflect the majority position in federal and state cases with regard to this issue. *See, e.g., United States v. Kelly*, 436 F.3d 992, 996 (8th Cir. 2006); *Toussaint v. State*, 755 So. 2d 170, 172 (Fla. Dist. Ct. App. 2000), *overruled on other grounds by Glover v. State*, 863 So. 2d

236 (Fla. 2003); *People v. Westpfahl*, 295 Ill. App. 3d 327, 330-31, 692 N.E.2d 831, 229 Ill. Dec. 842 (1998).

¶34 More importantly, this majority approach is consistent with the law and policy of the state of Washington regarding witness competency. Both statutes and court rules "set out a scheme where a witness of any age is presumed competent." *C.M.B.*, 130 Wn. App. at 843. In light of the presumption that a witness is competent to provide testimony, and the weight of persuasive precedent, we hold that the trial court did not have a duty to inquire sua sponte as to Ms. Managhan's competency as a witness.

¶35 Simply stated, adult witnesses are presumed to be competent. This presumption of competence continues unless challenged by a party at trial, and the challenging party bears the burden of establishing incompetence.

## Assistance of Counsel

¶36 Mr. Johnston contends he received ineffective assistance of counsel, arguing his counsel:

(1) had a conflict of interest;

(2) failed to challenge a juror;

(3) failed to seek dismissal, based on the destruction of the baggie;

(4) failed to request a competency hearing;

(5) failed to object to the prosecutor's statements about a witness's military service;

(6) failed to impeach a witness;

(7) failed to object to the State's questions of witnesses; and

(8) failed to request a jury instruction.

¶37 We consider each of these assertions separately.

¶38 A criminal defendant has the right to effective assistance of trial counsel under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution. *See, e.g., In re Pers. Restraint of Davis*, 152 Wn.2d 647, 672, 101 P.3d 1 (2004). To establish that the right to effective assistance of counsel

has been violated, the defendant must make two showings: that counsel's representation was deficient and that counsel's deficient representation caused prejudice. *Id.* (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)).

¶39 To establish deficient performance, the defendant must show that trial counsel's performance fell below an objective standard of reasonableness. *Id.* Trial strategy and tactics cannot form the basis of a finding of deficient performance. *State v. Cienfuegos*, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001) (quoting *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996)). Prejudice can be shown only if there is a reasonable probability that, absent counsel's unprofessional errors, the result of the proceeding would have been different. *Davis*, 152 Wn.2d at 672-73.

¶40 The reasonableness of trial counsel's performance is reviewed in light of all of the circumstances of the case at the time of counsel's conduct. *State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991).

(1) *Conflict of Interest*

¶41 Mr. Johnston asserts that his trial counsel's performance was ineffective due to a conflict of interest because his trial counsel's assistant may have spoken with Ms. Hughes, one of the State's witnesses, or worked with Mr. Bugbee, the attorney for Ms. Hughes.

¶42 "Effective assistance includes a duty of loyalty and a duty to avoid conflicts of interest." *State v. McDonald*, 143 Wn.2d 506, 511, 22 P.3d 791 (2001). Where the defendant can show an actual conflict of interest, this court presumes prejudice. *Davis*, 152 Wn.2d at 673-74.

¶43 Here, Mr. Johnston must establish that a conflict of interest existed based upon the record. *See id.* at 749. But there is nothing in the record that indicates whether Mr. Johnston's attorney ever represented Ms. Hughes or worked with Ms. Hughes's attorney, Mr. Bugbee. Mr. Johnston argues that his counsel's questioning of Ms.

Hughes somehow demonstrates a conflict. But this argument is strained at best. Ms. Hughes's recanting of her testimony does undercut Mr. Johnston's claim of a set up, but her cross-examination by Mr. Johnston's attorney does not demonstrate any conflict of interest. And Mr. Johnston has not provided this court with any basis to find that trial counsel's performance was adversely affected by the alleged conflict. There is simply no evidence that establishes a conflict of interest. Consequently, trial counsel's performance was not deficient.

(2)  *Voir Dire*

¶44  To establish ineffective assistance of counsel based on trial counsel's performance during voir dire, a defendant generally must demonstrate the absence of a legitimate strategic or tactical reason for counsel's performance. *See id.* at 709. The failure of trial counsel to challenge a juror is not deficient performance if there is a legitimate tactical or strategic decision not to do so. *State v. Alires*, 92 Wn. App. 931, 939, 966 P.2d 935 (1998). It is a legitimate trial strategy not to pursue certain matters during voir dire in order to avoid antagonizing potential jurors. *Id.*

¶45  Mr. Johnston fails to establish that the jurors would have been excused had they been challenged for cause. The remarks of the jurors identified by Mr. Johnston as evidence of bias are merely equivocal and do not establish any probability that the jurors had an actual bias against Mr. Johnston. *See State v. Noltie*, 116 Wn.2d 831, 839, 809 P.2d 190 (1991).

¶46  In addition, there were legitimate strategic reasons for Mr. Johnston's trial counsel to avoid challenging these jurors. Excessive questioning or a failed challenge to these jurors could have caused antagonism toward Mr. Johnston. Because trial counsel's performance during voir dire could be characterized as legitimate trial strategy, this performance cannot form the basis for a finding of ineffective assistance of counsel.

### (3) *Failure To Seek Dismissal of Charges*

¶47 Mr. Johnston next contends that his trial counsel rendered deficient performance by not seeking dismissal based on the destruction of the baggie containing the unidentified substance.

¶48 The failure to seek dismissal of the charges, where a motion to dismiss would probably be granted, constitutes ineffective assistance of counsel. *See State v. Carter*, 56 Wn. App. 217, 224, 783 P.2d 589 (1989). But this court cannot find prejudice unless there is a reasonable probability that the charges would have been dismissed had trial counsel sought a dismissal.

¶49 As previously noted, the evidence at issue was only potentially useful to Mr. Johnston. It was not material exculpatory evidence. As such, Mr. Johnston's counsel was required to show that police had acted in bad faith in order to obtain dismissal of the charges. *See Copeland*, 130 Wn.2d at 280. There was no showing of bad faith. Defense counsel did not render deficient performance by failing to make a motion for dismissal.

### (4) *Failure To Request a Competency Hearing*

¶50 This court will not find ineffective assistance of counsel for the failure to request a competency hearing unless Mr. Johnston can make an affirmative showing that the trial court would have likely found Ms. Managhan incompetent as a witness. Otherwise, Mr. Johnston has failed to demonstrate prejudice. *See, e.g., McFarland*, 127 Wn.2d at 337 n.4.

¶51 Mr. Johnston asserts that his trial counsel should have requested a competency hearing. But Mr. Johnston cannot demonstrate any prejudice from this failure. The threshold for witness competency is very low. In order to be competent as a witness, an individual must understand the nature of the oath to tell the truth and be

capable of giving a somewhat coherent account of his or her observations. *See Watkins*, 71 Wn. App. at 169-70.

¶52 The mere fact of a prior diagnosis of a mental disorder—here, depression—does not preclude an individual from being competent to provide testimony at trial. A review of Ms. Managhan's testimony demonstrates her general competency as a witness. There is no reasonable likelihood that the trial court would have granted a motion to disqualify Ms. Managhan as a witness. As such, Mr. Johnston cannot show any prejudice from the alleged deficient performance of trial counsel.

### (5) *Failure To Object to Prosecutor's Remarks*

¶53 Mr. Johnston asserts that his trial counsel rendered deficient performance by failing to object to remarks made by the prosecution in violation of the trial court's ruling. The trial court instructed the parties that they were not allowed to refer to the military service of one of the State's witnesses. The statement by the prosecutor that Mr. Johnston complains of was made before the trial court's order.

¶54 In order to show that counsel was ineffective for failing to object to the remarks of the prosecutor, the defendant must show that the objection would have been sustained. *See Davis*, 152 Wn.2d at 748. Counsel's decisions regarding whether and when to object fall firmly within the category of strategic or tactical decisions. *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *Id.*

¶55 As the State correctly notes, the trial court gave the restricting instruction to the parties after the remarks that form the basis of Mr. Johnston's allegation of error. Trial counsel could not have objected to the State's violation of a court order that did not exist at the time the alleged violation occurred.

(6) *Cross-Examination*

¶56 The extent of cross-examination is a matter of judgment and strategy. *Davis*, 152 Wn.2d at 720. This court will not find ineffective assistance of counsel based on trial counsel's decisions during cross-examination if counsel's performance fell within the range of reasonable representation. *Id.* Moreover, in order to establish prejudice for the failure to effectively cross-examine a witness, the defendant must show that the testimony that would have been elicited on cross-examination could have overcome the evidence against the defendant. *See id.*

¶57 Mr. Johnston argues that defense counsel rendered deficient performance in failing to effectively impeach one of the State's witnesses. Mr. Johnston's claim amounts to an assertion that trial counsel could have done a better job at cross-examination. This is not enough to demonstrate deficient performance. Moreover, Mr. Johnston does not show that a proper cross-examination would have been enough to overcome the evidence of his guilt. Therefore, the test for ineffective assistance of counsel has not been met.

(7) *Failure To Object to Leading Questions and Testimony Outside the Scope of Direct*

¶58 "To prove that failure to object rendered counsel ineffective, Petitioner must show that not objecting fell below prevailing professional norms, that the proposed objection would likely have been sustained, and that the result of the trial would have been different if the evidence had not been admitted." *Id.* at 714 (footnotes omitted). "The decision of when or whether to object is a classic example of trial tactics." *Madison*, 53 Wn. App. at 763. This court presumes that the failure to object was the product of legitimate trial strategy or tactics, and the onus is on the defendant to rebut this presumption. *Davis*, 152 Wn.2d at 714 (quoting *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002)).

¶59 Mr. Johnston asserts that counsel's representation was ineffective because trial counsel failed to object to

leading questions and to witness responses that were outside of the scope of the question asked. Because this court presumes that the failure to object was a legitimate tactical decision, Mr. Johnston must demonstrate an absence of legitimate strategy or tactics in failing to object. Mr. Johnston cites to extensive portions of the trial record that he asserts contain leading questions by the State and testimony that is arguably beyond the scope of the question. Mr. Johnston makes no argument as to why the failure to object was not a tactical decision, nor does the unobjected testimony demonstrate an absence of legitimate trial strategy. We, therefore, presume that the failure of Mr. Johnston's trial counsel to object was the product of legitimate trial tactics. *Id.*

(8) *Jury Instructions*

¶60 In order to find that Mr. Johnston received ineffective assistance of counsel based on the failure of trial counsel to request a jury instruction, this court must find that Mr. Johnston was entitled to the instruction, that counsel's performance was deficient in failing to request the instruction, and that the failure to request the instruction prejudiced Mr. Johnston. *See Cienfuegos*, 144 Wn.2d at 227.

¶61 Here, it is unclear exactly what instructions Mr. Johnston believes should have been given. He asserts that trial counsel should have proposed a lesser-included offense instruction for "some type of gross misdemeanor at least." Appellant's Br. at 34. Mr. Johnston fails to identify any specific jury instruction that should have been proposed by trial counsel. Because Mr. Johnston has not identified what jury instructions should have been proposed, he cannot show that he was entitled to that instruction or that trial counsel was ineffective for not seeking the instruction.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

¶62 In his statement of additional grounds for review, Mr. Johnston contends that his Sixth Amendment right to

counsel of choice was violated when the trial court determined that Mr. Maxey could not represent Mr. Johnston because of a conflict of interest. Mr. Johnston further asserts that he received ineffective assistance of counsel due to the failure of his trial counsel to seek dismissal of this case based on a violation of the speedy trial rule.

### *Counsel of Choice*

¶63 The Sixth Amendment right to counsel generally includes the right to select and be represented by counsel of the defendant's choice. *State v. Price*, 126 Wn. App. 617, 631, 109 P.3d 27 (quoting *State v. Roth*, 75 Wn. App. 808, 824, 881 P.2d 268 (1994)), *review denied*, 155 Wn.2d 1018 (2005). But the right to counsel of choice is not absolute. *See, e.g., State v. Varga*, 151 Wn.2d 179, 200, 86 P.3d 139 (2004). This court reviews the decision of the trial court with regard to the appointment of new counsel for an abuse of discretion. *Id.*

¶64 Although the trial court must engage in a presumption in favor of the counsel of defendant's choice, the presumption may be overcome by a showing of a conflict of interest on the part of defense counsel. *State v. Mac-Donald*, 122 Wn. App. 804, 812-13, 95 P.3d 1248 (2004) (quoting *Wheat v. United States*, 486 U.S. 153, 164, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988)). The trial court is not limited in its exercise of discretion to actual conflicts. A serious potential for conflict is also sufficient to support the trial court's decision to appoint new counsel based on a conflict of interest. *Id.*

¶65 Mr. Johnston asserts that Ms. Managhan's prior consultation with defense counsel's firm was not sufficient to establish an actual conflict of interest. Even assuming that Mr. Johnston's claims are correct, he still cannot establish that the trial court abused its discretion. There was clearly a serious potential for a conflict of interest. Ms. Managhan had discussed several issues regarding this case with a member of defense counsel's firm. This discussion included details that were relevant to the issues at trial.

Under these facts, the trial court did not abuse its discretion in appointing new defense counsel for Mr. Johnston.

*Ineffective Assistance of Counsel*

¶66 In his statement of additional grounds for review, Mr. Johnston again challenges the effectiveness of his trial counsel's assistance. He claims that defense counsel was ineffective for failing to seek dismissal due to a violation of the speedy trial rule.

¶67 While not clearly explained in Mr. Johnston's statement of additional grounds, the alleged violation in this case is presumably the delay between the mistrial declared by the court on June 7, 2005, and the subsequent trial that began on October 24, 2005. Although Mr. Johnston cites to a portion of the record as containing an earlier trial date on his speedy trial waiver, a review of the record demonstrates that what Mr. Johnston cited to was an unrelated deposition. As such, Mr. Johnston has not provided sufficient support from which this court could determine whether, when, or for how long Mr. Johnston's case was continued, or whether the speedy trial rule was violated.

¶68 In light of the absence of record to support Mr. Johnston's claim, he has not established ineffective assistance of counsel based on the failure to seek dismissal for a speedy trial violation.

¶69 We affirm.

SCHULTHEIS, A.C.J., and STEPHENS, J., concur.

Reconsideration denied February 12, 2008.