# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50854-1-II |
| Respondent, | |
| v. | |
| BRIAN NEAL TURNER, | UNPUBLISHED OPINION |
| Appellant. | |

BJORGEN, J. — Brian Turner appeals from his convictions of second degree burglary and third degree theft, asserting that his defense counsel was ineffective for failing to object to certain testimony at trial. We affirm.

## FACTS

On March 26, 2017, Lacey police officer Sean Bell was working as a security officer at a Fred Meyer store in Lacey. Bell saw Turner in the store walking at a "brisk pace" while wearing several layers of clothing. Report of Proceedings (RP) at 63. Bell noticed that there was an electronic security device attached to one of the coats that Turner was wearing. As Turner neared the store exit, an electronic security pedestal activated an alarm and flashing light. Bell yelled, "Stop, police," and Turner ran from the store. RP at 65. Turner dropped some of the clothing that he was wearing while Bell chased him. Turner eventually stopped, and Bell detained him without incident.

As Bell walked Turner back into the store, Turner stated that "he was homeless, that he wanted to be released, that he hadn't showered in a month, and he needed the clothing." RP at

66. Store employees recovered the clothing Turner had taken from the store, which included a coat, a sweatshirt, pair of pants, and a hat with a total value of $181.96. As Bell obtained identifying information from Turner, he learned that Turner had previously received a trespass notice from Fred Meyer. Bell received a copy of the trespass notice that Turner had signed, which stated in part:

> I, Turner, Brian, N., 10/12/76, do hereby acknowledge that I have been notified by Lacey P.D. C.A. Wenschhof of Fred Meyer that from this day forward I am prohibited from entering the premise [sic] located at 700 Sleater Kinney[,] Lacey, Washington. I acknowledge that if I do so, it could result in my arrest for Criminal Trespass in accordance with LMC 9.28.090 or LMC 9.29.080 and/or RCW 9A.52.070 or RCW 9A.52.080. I have been advised and do hereby acknowledge the above on this 31 day of July 2016.

Clerk's Papers (CP) at 14. The State charged Turner by amended information with second degree burglary and third degree theft, and the matter proceeded to jury trial.

At trial, Bell testified consistently with the facts stated above. The State called three additional witnesses, Lacey police officer Chris Wenschhof, and Fred Meyer employees Fernando Baeza and Helen Ferris.

Baeza testified that he saw Turner leave the store as the security pedestal alarm was activated. Baeza further testified that he saw Bell chase Turner and that he retrieved the clothing Turner had dropped during the chase. Wenschhof testified that he had issued a trespass notice to Turner on July 31, 2016 while working as a security officer at the Lacey Fred Meyer store. Wenschhof stated that he explained the trespass notice to Turner and that Turner signed the notice.

Ferris testified that she was working at the Lacey Fred Meyer store on March 26, 2017 as the store's loss prevention manager. Ferris stated that she had retrieved security video footage of

the incident, which video footage was admitted as an exhibit at trial and played for the jury. While the security video was being played for the jury, Ferris described it as showing Turner entering the store wearing a "longer coat with a hood." RP at 83. Ferris then described the video as showing Turner entering the Carhartt apparel section of the store. The State asked Ferris why the security camera was focused on the Carhartt section of the store, and Ferris replied, "It's usually a high theft item in, also, organized retail crime." RP at 85. Defense counsel did not object to this testimony. Ferris then described the security video as showing Turner remove his coat and put on a gray hooded sweatshirt before leaving the store without attempting to stop at a cash register to pay.

The jury returned verdicts finding Turner guilty of second degree burglary and third degree theft. Turner appeals from his convictions.

ANALYSIS

Turner contends that his defense counsel was ineffective for failing to object to Ferris's testimony that the Fred Meyer security camera was focused on the Carhartt section of the store because "[i]t's usually a high theft item in, also, organized retail crime." RP at 85. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). To demonstrate ineffective assistance of counsel, Turner must show both (1) that his counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. *Grier*, 171 Wn.2d at 32-33. Defense counsel's performance is deficient if it falls below an objective standard of

reasonableness. *Grier*, 171 Wn.2d at 33. Prejudice ensues if there is a reasonable probability that, but for counsel's purportedly deficient performance, the outcome of the proceeding would have differed. *Grier*, 171 Wn.2d at 34. Because both prongs of the ineffective assistance test must be met, a failure to show either prong will end the inquiry. *State v. Davis*, 174 Wn. App. 623, 639, 300 P.3d 465 (2013).

There is a strong presumption that defense counsel's conduct was not deficient. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). To overcome this presumption, Turner must show the absence of any "conceivable legitimate tactic explaining counsel's performance." *Reichenbach*, 153 Wn.2d at 130. Ineffective assistance of counsel claims present mixed questions of fact and law that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

Turner does not show that defense counsel's decision not to object to Ferris's testimony lacked a legitimate tactical basis and, thus, cannot overcome the presumption that defense counsel's performance was not deficient. "The decision of when or whether to object is a classic example of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). "The absence of an objection by defense counsel strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial." *State v. Edvalds*, 157 Wn. App. 517, 525-26, 237 P.3d 368 (2010). "'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007) (quoting *Madison*, 53 Wn. App. at 763).

Ferris's testimony as to the reasons why a security camera was focused on the Carhartt apparel section of the store was not central to the State's case as the video exhibit itself showed Turner taking items from that section of the store. Ferris's testimony regarding the placement of the security camera merely provided a context for what the jurors were viewing on the video exhibit. Contrary to Turner's argument, the testimony did not suggest that Turner was connected to organized crime. Ferris did not attribute the camera's placement to any conduct on the part of Turner, and her use of the word "also," in her statement, "It's usually a high theft item in, also, organized retail crime," suggested that Turner's case was unrelated to organized retail crime. RP at 85. Given the innocuous nature of Ferris's statement at issue, a reasonable defense counsel would not view the statement as prejudicial to Turner in the context of the trial. Accordingly, Turner cannot show that defense counsel lacked a legitimate tactical basis for not objecting to Ferris's testimony and, thus, his ineffective assistance of counsel claim cannot succeed.

Moreover, even assuming that defense counsel performed deficiently by failing to object to Ferris's testimony, Turner cannot demonstrate any resulting prejudice. As discussed above, Ferris's testimony regarding the security camera's placement merely provided context for what jurors were viewing on the video exhibit and did not suggest that Turner was connected to organized retail theft. Turner argues that defense counsel's failure to object to Ferris's testimony prejudiced his case because, absent this testimony, "the jury would have been more likely to believe the reason Turner provided for taking items from the store—that he was homeless and needed the clothes." Br. of Appellant at 9. But Turner's stated reasons for taking the clothing from Fred Meyer did not undermine any essential element of the crimes for which he was charged. To the contrary, Turner's statement to Bell as to his reasons for taking the clothing

supported the theft and burglary charges as it tended to show that he, in fact, took the clothing and had entered the store with the intent to take the clothing. Therefore, Turner fails to show any prejudice resulting from defense counsel's decision not to object to Ferris's testimony, and his ineffective assistance of counsel claim fails for this reason as well. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJØRGEN, J.

We concur:

WORSWICK, P.J.

JOHANSON, J.