# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59396-3-II |
| Respondent, | Consolidated with |
| v. | No. 59716-1-II |
| ZACHARY DEAN CURTIS, | |
| Appellant. | UNPUBLISHED OPINION |
| In the Matter of the Personal Restraint of: | |
| ZACHARY DEAN CURTIS, | |
| Petitioner. | |

MAXA, J. – Zachary Curtis appeals the denial of his CrR 7.8 motion, in which he argued that defense counsel provided ineffective assistance of counsel by failing to adequately advise him regarding the consequences of rejecting a plea offer. In a consolidated personal restraint petition (PRP), Curtis also argues that defense counsel provided ineffective assistance of counsel by failing to cross-examine the victim about her alleged attempt to pressure Curtis into making statements against his interest.

We conclude that Curtis does not establish that his defense counsel rendered ineffective assistance. Accordingly, we affirm the trial court's denial of Curtis's CrR 7.8 motion, and we deny Curtis's PRP.

FACTS

*Original Charge and Plea Offer*

AV, who was a friend of Curtis's girlfriend, accused Curtis of sexually assaulting her in March 2018 after a night of drinking and smoking marijuana with Curtis and his girlfriend. The State charged Curtis with third degree rape.

In August 2019, the State offered Curtis a plea deal in which the State would dismiss a pending bail jumping charge in return for Curtis pleading guilty to third degree rape. As part of the offer, the State agreed to recommend a six month sentence with credit for time served. The State also notified Curtis that this conviction would require him to register as a sex offender for 10 years. The State advised Curtis that if he rejected this offer, the State would add an indecent liberties charge and go to trial.

In October, the parties notified the trial court that they were still negotiating and that they were close to resolving the case. Defense counsel stated that Curtis had provided the State with a counteroffer. The court granted a continuance to allow for further plea negotiations.

*Rejection of Plea Offer and Amended Charges*

At the next hearing in November, the parties requested another continuance because they had just learned that Curtis had decided to reject the plea offer and go to trial. The State commented that it had expected Curtis to plead guilty that day. The trial court continued the hearing.

The State subsequently filed an amended information charging Curtis with attempted second degree rape, third degree rape, indecent liberties by forcible compulsion, and attempted indecent liberties while the victim was mentally incapacitated or physically helpless. The State later filed another amended information that added a bail jumping charge.

*Trial*

At trial, AV testified that she had been drinking and smoking marijuana at her friend's (Curtis's girlfriend's) house with her friend, Curtis, and others. Both AV and her friend got drunk. AV got into bed with her friend and her friend's son and fell asleep.

AV testified that she awoke when someone attempted to turn her over on her back by pulling on her breast. When she turned back over, the person stopped touching her and she fell asleep. AV woke again to find herself on her back while someone removed her pants. That person then sexually assaulted her and called her names. Although it was too dark to see her assailant, AV recognized Curtis's voice. AV also recalled seeing flashes of light during the incident.

AV returned home later that morning. She then decided to call the police.

AV testified that Curtis had called her after the incident and asked her not to report the incident to the police.[1] He said he would do anything if she did not report the incident. AV testified that she told Curtis that if he cooperated, she would support him and that she did not want anything bad to happen to his family.

Skamania County Sheriff's Detective Montey Buettner testified that he had interviewed AV. He said that she was emotional and upset about the incident, and she also was concerned

---

[1] It is unclear from the record whether AV called the police before or after talking to Curtis.

3

that it involved her friend's boyfriend and was worried about how it would affect her friend and her friend's family.

Buettner testified that he had also interviewed Curtis. The recorded interview was played for the jury. During the interview, Curtis said that his girlfriend had told him that AV had accused him of trying to have sex with her but that he did not recall anything because he had been drunk. He admitted to having called AV and asking her what had happened, and he testified that she told him that he had tried to have sex with her and that he had taken photographs. Curtis stated that he had to believe AV.

In his closing argument, Curtis argued that his intoxication negated the intent element of the charged offenses.

*Verdict and Sentence*

The jury convicted Curtis of third degree rape, indecent liberties with forcible compulsion, attempted indecent liberties without forcible compulsion, and bail jumping.

The trial court imposed an indeterminate sentence of 65 months to life on the indecent liberties by forcible compulsion conviction, plus lifetime community custody. The court also sentenced Curtis to 13 months on the third degree rape conviction, 18 months on the attempted indecent liberties conviction, and three months on the bail jumping conviction.

*Appeal*

On appeal, this court ordered that Curtis's attempted indecent liberties conviction be vacated and dismissed because it merged with his indecent liberties conviction, but the court otherwise affirmed his convictions. *State v. Curtis*, No. 54359-1-II, slip op. at 1-2 (Wash Ct. App. (Mar. 1, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2054359-1-II%20Unpublished%20Opinion.pdf. The court also ordered the trial court to fully consider

4

Curtis's request for a special sex offender sentencing alternative (SSOSA) and to determine if an evaluation was warranted. *Id.* at 2.

In June 2022, the trial court issued an order amending the judgment and sentence that vacated and dismissed the attempted indecent liberties conviction. The court also determined that a SSOSA sentence was not warranted. The court did not amend Curtis's sentence.

*CrR 7.8 Motion*

In April 2023, Curtis filed a timely CrR 7.8 motion in the trial court. In his motion, Curtis argued that he received ineffective assistance of counsel on two grounds. First, he argued that defense counsel had misadvised him of the potential consequences of proceeding to trial. Curtis asserted that defense counsel had advised him that the worst possible outcome should a jury convict him would be a sentence of 12 months and one day. Curtis also asserted that had he understood the true consequences of going to trial, he would have accepted the plea offer.

Second, Curtis argued that defense counsel had failed to question AV "about dishonest conduct related to the case." Clerk's Papers (CP) at 74. Specifically, Curtis asserted that AV had attempted to fraudulently induce him into making statements against his own interest in exchange for the dismissal of the criminal charges. Curtis's motion did not specify what statements AV allegedly wanted him to make and did not state that he had ever informed defense counsel of these statements. And Curtis did not include any declarations supporting this claim.

The trial court determined that only Curtis's first issue required an evidentiary hearing. The court appointed new counsel to represent Curtis on the CrR 7.8 motion.

*CrR 7.8 Evidentiary Hearing*

Curtis's mother Penny Curtis testified that she had attended most of Curtis's hearings and meetings with defense counsel and that she had helped Curtis read correspondence from defense

counsel. Penny[2] stated that although defense counsel advised Curtis that he could be subject to a lifetime sex offender registration requirement, he never advised Curtis that he risked a life sentence if he chose to go to trial. And she asserted that defense counsel had stated in Curtis's presence that the longest sentence the trial court would impose was a year and a day.

Penny testified that she accompanied Curtis when he met with defense counsel because Curtis had difficulty processing information due to a head injury that he suffered as a child. She stated that the head injury caused Curtis to have a learning disability and that it took him longer to understand things. Penny also stated that Curtis had tested two points above mentally disabled and that he had an individualized education program when he was in school. And she further stated that Curtis had difficulty with reading comprehension and did not understand what he read unless someone explained it to him in simple terms.

Penny testified that she did not really understand the difference between going to trial and accepting a plea offer and that it was difficult to explain things to Curtis when she did not understand them herself. But she stated that she would have understood if she had been told that he was risking a potential life sentence if he went to trial.

Curtis testified that he did not understand the potential consequences of going to trial when he decided to reject the plea offer. However, he stated that he understood that the plea offer would have required him to plead guilty to third degree rape and bail jumping and that the State would have recommended a six month sentence with a lifetime sex offender registration requirement. Curtis recalled discussing this plea deal with defense counsel and in the presence of his mother. But he asserted that he understood that if he rejected the plea offer and went to trial, he only would risk being sentenced to a year and a day and would have to take a class.

---

[2] We refer to Penny Curtis by her first name to avoid confusion. No disrespect is intended.

Curtis stated that he had discussed his decision to reject the plea with his mother, and they decided because there was not a significant difference in the sentences they could fight the charges. Curtis also testified that he did not recall reviewing any documents with defense counsel.

Curtis testified that when he was sentenced, he understood that his sentence was 64 or 65 months but that he did not understand that he was potentially serving a lifetime prison sentence until others alerted him to some language in the decision on his appeal. And he testified that he did not recall defense counsel ever advising him that he was risking a potential life sentence. He asserted that if he had been aware of this, he would have accepted the plea offer.

Curtis also testified that he recalled receiving one or two letters from defense counsel while he was living at his mother's house. Despite admitting that he might have asked defense counsel if there was a way to avoid a sex offender registration requirement, Curtis testified that he did not recall talking with defense counsel about making a counteroffer in an attempt to avoid any charges that required registration.

Regarding his learning disability, Curtis testified that he had been in a special education class in school, but he had graduated from high school. He stated that he could read words of four letters or less, but his reading comprehension declined after that. And he stated that although he could say many words, he did not have good reading comprehension. He also asserted that legal terms were particularly hard for him to understand.

Curtis testified that he had some difficulty understanding verbal communications. He stated that when he was trying to understand something verbal, he had to think and he needed to have things repeated multiple times for him to fully understand. He admitted that he understood that he would be subject to a sex offender registration requirement whether or not he pleaded

guilty and that he discussed this with defense counsel. Curtis also testified that he understood the concept of sex offender registration because he knew people who were required to register. And he testified that he had understood that he could be punished for missing court and that his bail jumping charge was based on his missing court dates even though he was confused about why this would be bail jumping when he had been released without bail.

When the prosecutor asked Curtis about his direct appeal, Curtis testified that the appeal raised approximately 14 issues but that he could not recall the specific issues because it had been so long ago. However, he testified that at the time of the appeal he understood what some of the issues were. When asked what happened as the result of the appeal, he responded that one charge was dropped because it overlapped another charge. He also recalled the SSOSA issue that was raised. Curtis also testified that after the appeal, his mother retained new counsel for him and he was able to explain to his new lawyer what relief he was seeking.

Curtis's defense counsel testified for the State. He testified that he had extensive experience with criminal cases and that it was his practice to convey any plea offers to his clients. He also testified that it was his practice to advise his clients of the possible consequences of choosing to go to trial. He would calculate the potential sentences and communicate and discuss them with his clients. And he stated that he would also provide his clients with copies of sentencing guidelines for their own information.

Defense counsel testified that when he was first appointed in Curtis's case, Curtis had been charged with third degree rape and bail jumping. The State made a plea offer, and he and Curtis had worked on a counteroffer together in an attempt to avoid the sex offender registration requirement.

The State introduced Exhibit 8, a chart that defense counsel testified he had presented to Curtis. This chart set out the possible sentences Curtis could receive if he went to trial and specifically noted that one or more of the potential sentences would include an indeterminate life sentence. The chart reflected that if Curtis was found guilty of indecent liberties with forceable compulsion, the sentence would be 57 to 75 months to life. Defense counsel testified that he went over this information with Curtis and advised him of potential consequences before Curtis decided to reject the plea offer.

The State also introduced Exhibit 4, a December 16, 2019 letter defense counsel sent to Curtis regarding the amended charges and Curtis's decision to go to trial. In this letter, defense counsel addressed the amended charges and the bail jumping charge that had not yet been added to the information. Defense counsel described the potential sentences for each offense, noting that, depending on the verdict on the other charges, the indecent liberties with forcible compulsion charge could result in a "72-96 months minimum, with a maximum sentence of life in prison" with his release following the minimum sentence dependent on the Indeterminate Sentence Review Board (ISRB). Ex. 4 at 1-3.

Defense counsel attached copies of the adult sentencing guideline grids for each offense to the letter. And in the letter defense counsel warned Curtis that there was a high probability that the jury would find him guilty and that the resulting sentence would be significantly greater than if he had agreed to the plea offer. Defense counsel encouraged Curtis to reconsider pleading guilty in light of this information. The attached sentencing grid for the indecent liberties with forcible compulsion offense included a notation suggesting that regardless of his offender score, his maximum sentence would be life and his release would be up to the ISRB.

9

Defense counsel testified that he sent the December 16 letter to Curtis shortly after Curtis refused the plea offer to clarify the potential standard ranges and maximum sentences and the risks he was taking by going to trial. He also sent the letter to encourage Curtis to reconsider the plea offer. Defense counsel further testified that he never advised Curtis that the highest sentence he could receive if he went to trial was a year and a day in prison.

Defense counsel testified that Curtis's mother told him at their first meeting that Curtis had suffered a head injury as a child and that Curtis had been in special education. Defense counsel stated that Curtis's mother told him that Curtis was on the border of mentally disabled. Defense counsel stated that he considered this information when he communicated with Curtis and that he was confident that he had been able to communicate effectively with Curtis when talking about the plea and potential consequences. Specifically, defense counsel testified that when they were working together on a counteroffer, all of their conversations appeared to be coherent and Curtis responded normally.

On cross-examination, defense counsel testified that he permitted Curtis's mother to be present at their meetings as an accommodation for Curtis's cognitive limitations and to ensure that Curtis understood their communications. Defense counsel did not think that having an additional accommodation such as hiring a specialist to break down what he said would have improved his communication with Curtis.

*CrR 7.8 Motion Closing Argument*

In his written closing argument, Curtis did not make his original argument that defense counsel had incorrectly advised Curtis that the maximum sentence would have been a year and a day or assert that defense counsel had failed to advise him of a potential life sentence. Instead, Curtis argued for the first time that defense counsel provided ineffective assistance of counsel

10

when, in light of Curtis's known cognitive limitations, defense counsel "failed to confirm Mr. Curtis's understanding of the consequences of sentencing if conviction followed trial." CP at 91.

In its written closing argument, the State argued that Curtis and his mother were not credible for a variety of reasons and that the testimony about Curtis's intellectual difficulties did not demonstrate that he failed to understand what defense counsel said about the risk of going to trial. To support the later premise, the State emphasized that (1) defense counsel had testified that his conversations with Curtis were coherent, (2) Curtis's testimony established that he understood many legal concepts and that he was capable of understanding the sentencing consequences of the State's plea offer, (3) the evidence demonstrated that Curtis was capable communicating with defense counsel sufficiently to assist in crafting a counteroffer to the State's plea offer, (4) Curtis's testimony showed that Curtis was capable of understanding various legal issues because he could identify and expressed an understanding of some of the issues addressed in his appeal, and (5) Curtis was capable of identifying the relief he was seeking sufficiently to communicate with the counsel his mother initially retained for his CrR 7.8 motion. The State also argued that defense counsel's testimony was credible and that the documentation the State presented demonstrated defense counsel had advised Curtis that he would risk an indeterminate life sentence if he went to trial.

*CrR 7.8 Findings and Decision*

In its written findings of fact, the trial court found that Curtis had a learning disability that affected his reading comprehension. Despite this, Curtis graduated from high school. The court also found that defense counsel had no difficulty communicating with Curtis and that his conversations with Curtis were all coherent.

11

The trial court found that Curtis's mother regularly attended Curtis's court hearings and that she met with defense counsel on one occasion. Both Curtis and his mother testified that they understood that the State had offered Curtis a six month plea deal and that defense counsel informed them that the worst case scenario if Curtis chose to go to trial was a year and a day in prison. And Curtis testified that he did not remember being advised that he could face a life sentence or lifetime supervision if he went to trial.

The trial court also found that defense counsel was an experienced attorney and that in his practice he always conveyed plea offers to defendants and he always explained the risks of going to trial. The court found that in November 2019, the State made its plea offer in which it would recommend a six month sentence but that, to defense counsel's surprise, Curtis rejected the offer as they were in the hallway coming into court.

The trial court found that defense counsel's December 16, 2019 letter was sent to Curtis and that this letter advised Curtis of the sentencing ranges that would apply if he rejected the plea offer and that this included advising Curtis that he could be sentenced to a minimum sentence of 111 to 147 months with a maximum sentence of life under the ISRB. The court also found that defense counsel also included copies of the Adult Sentencing Guideline grids for each crime with which Curtis had been charged and that defense counsel expressed concern about the potential success for the trial. And Curtis's mother confirmed that she received this letter and gave the letter to Curtis. Curtis never requested to revisit the six month offer or to make a different counteroffer to the State even after having received defense counsel's letter advising him of the potential consequences of being convicted on the amended charges.

In its ruling, the trial court stated:

In the present case, Curtis contends that [defense counsel] failed to properly advise Curtis of the consequences if Curtis went to trial and misadvised him that the

12

maximum penalty if went to trial and was convicted would only result in a maximum sentence of a year and a day. *In the present case, [defense counsel] was able to coherently discuss the case with Curtis on every occasion that they discussed the case. [Defense counsel] did not have any problems communicating with Curtis* who may have had a learning disability, but had successfully graduated from high school. Furthermore, in the December 16, 2019 letter, [defense counsel] advised Curtis of the consequences that Curtis was facing if Curtis went to trial and was found guilty and further informed Curtis of his concerns if the matter proceeded to trial. The letter clearly advises Curtis the potential consequences of a maximum life sentence if Curtis was convicted of either the Attempted Rape 2nd Degree or Indecent Liberties charge. Furthermore, [defense counsel] implored Curtis to consider a plea in "light of this deluge of factors." Curtis never requested that [defense counsel] to go back to the State about the original 6 month offer or any other offer even after Curtis had reviewed the . . . letter that discussed the potential consequences if convicted at trial.

CP at 119 (emphasis added).

The trial court concluded that Curtis failed to establish deficient performance and that the ineffective assistance of counsel claim based on the alleged failure to advise Curtis failed. Accordingly, the court denied relief on this issue.

The trial court also entered an order transferring the remaining issue regarding defense counsel's cross-examination of AV to this court for consideration as a PRP under CrR 7.8(c)(2).

Curtis appeals the trial court's order denying his CrR 7.8 motion. The court consolidated Curtis's appeal with his PRP.

ANALYSIS

A. LEGAL PRINCIPLES – CRR 7.8 AND INEFFECTIVE ASSISTANCE

We review a trial court's denial of a CrR 7.8 motion for relief from judgment for abuse of discretion. *State v. Hubbard*, 1 Wn.3d 439, 445, 527 P.3d 1152 (2023). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Id*.

We review the findings of fact on a CrR 7.8 motion for substantial evidence. *State v. Wood*, 19 Wn. App. 2d 743, 775, 498 P.3d 968 (2021). Substantial evidence is a sufficient

13

quantity of evidence to persuade a rational, fair-minded person that a finding is true. *State v. Carter*, 3 Wn.3d 198, 212, 548 P.3d 935 (2024). We "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Roberts*, 5 Wn.3d 222, 234, 572 P.3d 1191 (2025). And unchallenged findings of fact are verities on appeal. *Id*.

Under CrR 7.8(b)(5), a court may grant relief from judgment for "[a]ny other reason justifying relief from the operation of the judgment." Ineffective assistance of counsel can provide the basis for vacating a judgment under CrR 7.8(b)(5). *State v. Gomez Cervantes*, 169 Wn. App. 428, 434, 282 P.3d 98 (2012).

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024). To prevail on an ineffective assistance of counsel claim, a defendant must show both that defense counsel's performance was deficient and that the deficient performance was prejudicial. *Id.*

Counsel's representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *State v. Vazquez*, 198 Wn.2d 239, 247-48, 494 P.3d 424 (2021). There is a strong presumption that defense counsel's performance was reasonable. *Bertrand*, 3 Wn.3d at 128. To rebut that presumption, the defendant bears the burden of establishing the absence of any legitimate strategic or tactical reason explaining counsel's conduct. *Vazquez*, 198 Wn.2d at 248.

A defendant's right to effective assistance of counsel extends to plea negotiations. *State v. Sprague*, 16 Wn. App. 2d 213, 237, 480 P.3d 471 (2021). The right to effective assistance of counsel in plea negotiations includes the obligation to assist the defendant in making an informed

decision regarding whether to plead guilty or to proceed to trial. *State v. Estes*, 188 Wn.2d 450, 464, 395 P.3d 1045 (2017). Failure to advise the defendant of the potential sentencing consequences should the defendant reject a plea offer can constitute ineffective assistance of counsel. *State v. Drath*, 7 Wn. App. 2d 255, 267-68, 431 P.3d 1098 (2018).

The extent of defense counsel's cross-examination is a matter of judgment and strategy, and we will not find ineffective assistance of counsel based on counsel's decisions during cross-examination if counsel's performance fell within the range of reasonable representation. *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007).

For ineffective assistance of counsel, prejudice exists if there is a reasonable probability that, except for counsel's deficient performance, the result of the proceeding would have been different. *Bertrand*, 3 Wn.3d at 128. In the context of plea negotiations, to establish prejudice "the 'defendant must show the outcome of the plea process would have been different with competent advice.' " *Drath*, 7 Wn. App. 2d at 267 (quoting *Lafler v. Cooper*, 566 U.S. 156, 163, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012)).

B.     APPEAL – COMMUNICATION OF RISKS

Curtis admits that the record does not support his original argument that defense counsel provided ineffective assistance during the plea negotiation process because defense counsel either failed to advise him or affirmatively misadvised him of the risks of going to trial. Instead, Curtis now argues that the trial court erred when it denied the CrR 7.8 motion because defense counsel failed to (1) adequately communicate the risk of refusing the plea offer in light of Curtis's cognitive limitations, and (2) confirm that Curtis understood these risks.[3] We disagree.

---

[3] Curtis also argues that defense counsel should have ordered a mental examination in order to protect Curtis's interests and that defense counsel failed to adequately accommodate Curtis's disability. He also contends that defense counsel never advised him that he would be subject to

15

1.     Adequate Communication

The evidentiary hearing established that defense counsel informed Curtis both at a meeting and in a detailed letter that he faced a minimum sentence of 57 or 72 months and a maximum sentence of life if convicted of indecent liberties with forceable compulsion. But Curtis claims that his cognitive limitations prevented him from understanding what he was told.

Curtis's argument that defense counsel failed to adequately convey the risks of going to trial given Curtis's cognitive limitations is, in effect, a challenge to the trial court's finding that defense counsel "did not have any problems communicating with Curtis." CP at 119. But defense counsel testified that he communicated effectively with Curtis and that they were able to discuss his case coherently. And there was evidence in the record establishing that Curtis had the ability to understand and discuss legal issues because during the CrR 7.8 hearing he was able to understand the questions he was asked, explain various legal concepts such as merger, and explain the nature of the issues he raised in his appeal. Curtis's testimony also established that he had understood the nature of the State's plea offer, the concept of bail jumping, and the concept of sex offender registration. These abilities do not suggest that Curtis would have been unable to understand defense counsel's advice about the type of sentence he was risking by choosing to go to trial.

In addition, the evidence also shows that defense counsel considered Curtis's cognitive limitations when advising him because defense counsel testified that he was aware of and considered Curtis's limitations when they communicated and that defense counsel permitted

---

life-time community custody. But Curtis did not argue that defense counsel's representation was ineffective on these grounds in his CrR 7.8 motion, during the CrR 7.8 hearing, or in his closing argument. So neither the State nor the trial court had an opportunity to address these arguments. Accordingly, we do not consider them. *See* RAP 2.5(a).

Curtis's mother to participate in their communications to ensure that Curtis understood what was happening.

We conclude that substantial evidence supports the trial court's finding that defense counsel was able to communicate with Curtis. Accordingly, we hold that Curtis fails to establish ineffective assistance of counsel on this ground.

2.    Confirmation of Understanding

Curtis also argues that defense counsel provided ineffective assistance of counsel because he failed to confirm that Curtis understood the consequences of rejecting the plea offer. However, the evidence shows that defense counsel clearly communicated – orally and in writing – the possible sentencing ranges if Curtis was convicted. Curtis provides no authority for the proposition that defense counsel has an obligation to do something more than clearly communicate the consequences of a conviction.

In addition, the record does not disclose whether defense counsel did attempt to confirm Curtis's understanding of the potential sentencing consequences before Curtis chose to reject the plea offer.[4] Because it is Curtis's burden to establish that defense counsel failed to confirm his understanding, this argument fails. *State v. Drake*, 32 Wn. App. 2d 390, 394-95, 556 P.3d 170 (2024) (defendant has the burden to establish error in a CrR 7.8 motion), *review denied*, 4 Wn.3d 1007 (2025).

Accordingly, we hold that Curtis fails to establish ineffective assistance of counsel on this ground.

---

[4] We note that this lack of evidence is likely because this argument was not articulated until Curtis's closing argument. Because this argument was not made before or at the hearing, neither party had any incentive to present such evidence.

C.    PRP – CROSS-EXAMINATION OF AV

In his PRP, Curtis argues that defense counsel provided ineffective assistance of counsel by failing to cross-examine AV about her conversations with him after the incident. He claims that AV told him that she would drop the charges if he made certain, unspecified statements against his interest. And he contends that this was an attempt to fraudulently induce him into making statements against his interest. We disagree.

1.    PRP Principles

To prevail in a PRP, the petitioner must establish by a preponderance of the evidence (1) a constitutional error that resulted in actual and substantial prejudice or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018).

RAP 16.7(a)(2) requires a petitioner to specifically identify the evidence available to support the factual allegations in a PRP. *In re Pers. Restraint of Wolf*, 196 Wn. App. 496, 503, 384 P.3d 591 (2016). Conclusory allegations are insufficient. *Id.* Any factual allegations must be based on more than speculation and conjecture, and the petitioner must show that he has competent, admissible evidence to establish facts that would entitle him to relief. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013).

2.    PRP Not Adequately Supported

Curtis argues that defense counsel's representation was deficient because he failed to cross-examine AV about her alleged attempt to induce Curtis into making statements against his own interest in exchange for her dismissing the charges. But cross-examination generally involves defense counsel's judgment and strategy. *Johnston*, 143 Wn. App. at 20. Curtis fails to

18

show or even argue the absence of any conceivable tactical reason to avoid cross-examining AV regarding this matter.

In addition, Curtis does not provide any evidence or even allege that defense counsel was aware that AV allegedly had attempted to improperly induce Curtis into making statements in exchange for dismissal of the charges. If defense counsel was not aware of any such attempt to influence Curtis, it was not objectively unreasonable for counsel to fail to question AV about such attempts. Curtis does not establish deficient performance on this ground because he has failed to adequately support his PRP.

Finally, Curtis does not explain how his proposed cross-examination of AV would have changed the result at trial. Therefore, he cannot show prejudice.

We hold that Curtis fails to establish ineffective assistance of counsel on this ground.

CONCLUSION

We affirm the trial court's denial of Curtis's CrR 7.8 motion, and we deny Curtis's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

CRUSER, C.J.

PRICE, J.

19