IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37065-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CARMELO HERNANDEZ SIERRA, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Carmelo Hernandez Sierra appeals his convictions of

second degree rape, indecent liberties, and witness tampering. He argues the trial court

violated his right to present a defense by limiting his cross-examination of the child-

victim, the prosecutor committed misconduct in closing, and his counsel was ineffective

for not objecting to the misconduct during closing. We disagree with his arguments and

affirm.

FACTS

On September 21, 2018, 14-year-old N.M.[1] told her mother, Corina Carreon, that

her stepfather, Carmelo Hernandez Sierra, tried to rape her. They went to the emergency

___

[1] To protect the privacy interests of the child victim, we use his/her initials
throughout this opinion. Gen. Order 2012-1 of Division III, *In re the Use of Initials or
Pseudonyms for Child Victims or Child Witnesses*, (Wash. Ct. App. June 18, 2012),
https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber
=2012_001&div=III.

room where Sexual Assault Nurse Examiner (SANE) Susan LaChapelle interviewed

N.M. The girl reported she was home from school that day because she had injured her

ankle the day before. She said her stepfather came home for lunch, gave her four-year-

old sister his cellphone to watch Netflix and then forced N.M. upstairs and into his

bedroom. He locked the door, removed her clothes, put his tongue on her vagina, flipped

her over, and eventually ejaculated on her legs and lower back. She told the nurse her

stepfather warned her "'don't tell your mom because she'll get mad and kill us both.'"

Report of Proceedings (RP) (June 3, 2019) at 218. The SANE nurse used a perineal swab

to gather evidence. The swab was later tested and was found to contain amylase and

DNA[2] from two sources, N.M. and Hernandez Sierra.

The State charged Hernandez Sierra by amended information with second degree

rape, indecent liberties (forcible compulsion), intimidating a witness, and rape of a child

in the third degree. The court set the trial to begin May 30, 2019.

*Defendant's motion to use immigration status to impeach Corina Carreon and
N.M.*

The day before trial, Hernandez Sierra filed a motion to use his wife's immigration

status to impeach her and N.M. Defense counsel offered the following facts in support of

the motion:

---

[2] Deoxyribonucleic acid.

2

In the year prior to [N.M.] making her allegations against Mr. Hernandez-Sierra, her mother, Corina Carreon, who is not legally residing in the United States, sought counsel from a Wenatchee attorney about resolving her residential status. At that time, nothing was available to her unless she qualified for a U-Visa. After that time, Mr. Hernandez-Sierra and [his wife[3]] joked about one of them assaulting the other to obtain lawful status in the [United States of America].

On September 21, 2018, [N.M.] levied the charges herein against Mr. Hernandez-Sierra. Subsequently, Ms. Carreon returned to Wenatchee and obtained representation by Northwest Immigrant Rights Project, seeking a U-Visa as an "indirect victim" of the crimes alleged against Mr. Hernandez-Sierra.

At a defense interview, Ms. Carreon confirmed she was seeking a U-Visa, and she understood her cooperation with the State's prosecution of Mr. Hernandez-Sierra is required for her to obtain the Visa. She also advised NM is a [United States] citizen.

Clerk's Papers (CP) at 191.

At the hearing, defense counsel argued he should be allowed to cross-examine Carreon and N.M. about Carreon's immigration status and U visa application. He argued that cross-examination was important so the jury could understand why N.M. concocted or embellished the sexual encounter. The State responded that Carreon denied that she and the defendant ever saw an immigration attorney, much less joked about making a false claim. She would testify that the only attorney the two ever saw related to Hernandez Sierra's prior driving while under the influence (DUI) arrest.

---

[3] In his motion, defense counsel wrote "NM," but his argument during pretrial makes clear he meant "his wife."

3

The trial court ruled that Hernandez Sierra could not cross-examine either his wife or his stepdaughter on the U visa issue unless he first testified about it. And if he did, he could recall his wife as a witness and examine her about the topic. The court reserved ruling on whether Hernandez Sierra would be allowed to impeach N.M. on the U visa issue.

Defense counsel raised the issue one week later, just before N.M. testified. He argued the issue was valid impeachment because it provided a clear motive for N.M. to embellish her story. The trial court asked for the exact facts to which the defendant would testify. Counsel replied that after the Wenatchee trip, the mother and his client would joke about being able to assault one another to get a U visa. Counsel clarified that N.M. and his client also joked about it on multiple occasions. The court denied Hernandez Sierra's request to examine N.M. on the topic for at least two reasons. First, there was no evidence of prior animosity between N.M. and her stepfather that might explain why she would make such a serious accusation, given there was no evidence her mother was about to face deportation proceedings. Second, the mother's ability to obtain the U visa only required her to cooperate with the prosecution; it did not require N.M. to cooperate. The court said it might revise its ruling if Hernandez Sierra's testimony

provided "a little bit more background about what was happening with the immigration issues." RP (June 3, 2019) at 27.

*N.M.'s testimony*

N.M. described the sexual assault. She testified that when her stepfather came home for lunch that day he gave her four-year-old sister his cell phone to watch Netflix in the kitchen. He then came out of the kitchen, grabbed N.M. by the waist, and pulled or pushed her up the stairs. When they got upstairs, her stepfather took her to the bedroom and she resisted by grabbing the doorjamb. He overpowered her, pushed her on the bed, performed oral sex on her, then flipped her over, held her down, and tried to penetrate her. She screamed and pinched him. Eventually, he ejaculated between her legs. Afterward, he wiped them both off with a shirt and got dressed. He said he was sorry and it would not happen again.

She then locked herself in the bathroom and started crying. Her stepfather opened the door with a bobby pin, told her to stop crying, wiped her tears, and apologized. He later told her not tell her mother what happened because she would kick them out of the house.

After the lunch recess, the State questioned N.M. if Hernandez Sierra said anything beyond not to tell her mom because she would kick them out of the house. N.M.

5

answered that he also said not to tell because her mom would kill them. On cross-examination, defense counsel questioned N.M. about this addition to her testimony and sought to show that she had a discussion with one of the State's attorneys during the noon recess. N.M. admitted she had a short discussion, but confirmed that Hernandez Sierra also warned her not to tell her mother because her mother would kill them.

*Hernandez Sierra's testimony*

Hernandez Sierra testified that when he arrived home for lunch, N.M. was laying on the couch, but shortly thereafter went upstairs to his bedroom, laid on his bed, and called to him. He did not have much time but went upstairs to see what she wanted. He said N.M. asked him to "shave her" and threatened to tell her mother he touched her if he refused. RP (June 5, 2019) at 384. He responded by taking an electric shaver out of his dresser and turning the battery around so it would not function. He went back downstairs after this conversation and began feeding his youngest daughter her lunch, but N.M. kept calling for him. He went back upstairs and laid down beside N.M. on the bed because he was very tired. He was on his back, falling asleep, with his arms stretched out lengthwise. Then N.M. straddled him, told him to be quiet, and moved seductively until he ejaculated between her legs. Afterward, he told N.M. "not to tell her mom, because she would, you know, run us out of the house. And she was capable of killing us."

6

RP (June 5, 2019) at 402.  He tried to call his wife to tell her what happened but she did

not answer.  He felt sorry for N.M. and said he should not have done that.

On cross-examination, the prosecutor asked Hernandez Sierra: "[B]efore you came

into court today, you had an opportunity to speak with your attorney and go over your

testimony before you testified; isn't that right?"  RP (June 5, 2019) at 422.  The defense

objected, which the court sustained.  The prosecutor then moved on to talking about

N.M.:

> [THE STATE:]  [N.M.] has been devastated by your actions; isn't
> that true?
> [HERNANDEZ SIERRA:]  What is devastated?  I don't
> understand.[4]
> [THE STATE:]  Been forever injured or damaged and probably will
> never trust men again as a result of your actions; isn't that true?
> [HERNANDEZ SIERRA:]  I don't understand, she never what?
> [THE STATE:]  [N.M.] will have to live with what you did to her on
> September 21st, 2018 for the rest of her life; isn't that true?
> [HERNANDEZ SIERRA:]  Yes, so will I.
> [THE STATE:]  You're telling this jury that you've been devastated
> by this?
> [HERNANDEZ SIERRA:]  I feel bad, as well, yes.

RP (June 5, 2019) at 440.

---

[4] Hernandez Sierra testified through an interpreter.

7

*Defense counsel's closing argument*

Hernandez Sierra's counsel focused much of his argument on discrediting N.M.'s testimony. He pointed to the inconsistencies and noted that "her story goes awry right from the beginning." RP (June 6, 2019) at 500. He questioned why she said that Hernandez Sierra both pushed and pulled her up the stairs. He related the pushing and pulling to an old Dr. Seuss[5] cartoon, then commented, "This high schooler told you she thought pushing and pulling were the same thing. Apparently she never saw Dr. Seuss, apparently they don't show it any more for kids in schools." RP (June 6, 2019) at 504.

The defense then stressed how N.M.'s story—regarding what Hernandez Sierra said Ms. Carreon would do if she found out—changed after the lunch recess. He asked the jury, "Are you going to believe the testimony she gave before she met with state's prosecutors, or are you going to believe the remade testimony, the changed testimony after she had that meeting with the prosecutors?" RP (June 6, 2019) at 507. He continued emphasizing the inconsistencies in N.M.'s testimony and the lack of evidence.

*Prosecutor's rebuttal closing argument*

The prosecutor began his rebuttal by stating, "I noted one thing I wanted to say at

---

[5] Counsel was likely referencing the "pushmi-pullyu," a two-headed fantastical creature from Hugh Lofting's *The Story of Doctor Dolittle*.

the outset, which was [defense counsel] made a number of comments and kind of joked about things. That's very troubling." RP (June 6, 2019) at 545. He went on to discuss the defendant's claims and defense counsel's arguments: "I can make room for some of the things that [defense counsel] said. Some of the things he said were reasonable. A lot of things he said here were unreasonable." RP (June 6, 2019) at 550-51.

The prosecutor argued to the jury that Hernandez Sierra's defense counsel "was leading him the whole way" and asserted, "It wasn't Mr. Hernandez spontaneously telling his story spontaneously, that he did on his own, he followed the script that [defense counsel] had worked out." RP (June 6, 2019) at 547-48.

He discussed the reasonable doubt standard, referring to a jury instruction that read: "If, from such consideration [of the evidence], you have [an] abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt." RP (June 6, 2019) at 456. He gave an example:

> [A]n abiding belief that all of us would have would be in the innocence of children, which is not a phase that they're going through, that they're innocent. The state submits to you that the—I have to talk to you in terms of not what I think, but what the state has proven—that the state has established evidence that should lead you to an abiding belief in the truth of the charges that Mr. Hernandez is guilty of in this case.

RP (June 6, 2019) at 551-52.

9

He then talked about the consequences of the incident: "The devastation and belief of a 14-year-old girl that probably will never trust men again, will have to live with this every day until she lays her head down on her pillow to die, that her stepfather sexually molested her, sexually assaulted her and raped her." RP (June 6, 2019) at 556.

The prosecutor concluded with a story about a boy who wants to outsmart an old wise man. The boy captures a bird, takes it to the man, and plans to ask him whether the bird in his hands is alive or dead. If the man says it is alive, the boy will squeeze the bird until it dies; if the man says it is dead, the boy will let the bird fly away. The boy's plan fails, however, when the man says, "the bird is in your hands, my son." RP (June 6, 2019) at 559. The prosecutor told the jury, "The case . . . is in your hands." RP (June 6, 2019) at 559-60.

Defense counsel did not object during rebuttal closing.

*Jury verdict and sentencing*

The jury found Hernandez Sierra guilty of rape in the second degree, indecent liberties, witness tampering, and rape of a child in the third degree. The jury also found Hernandez Sierra and N.M. were part of the same household, N.M. was under 15 years old at the time of the incident, and Hernandez Sierra urged her to withhold testimony or information from law enforcement.

10

At sentencing, the parties agreed that the rape convictions merged and Hernandez Sierra should only be sentenced for the greater offense. The court dismissed the rape of a child in the third degree charge under the double jeopardy clause and sentenced Hernandez Sierra to an indeterminate sentence of 300 months to life imprisonment.

Hernandez Sierra appealed.

## ANALYSIS

### RIGHT TO PRESENT A DEFENSE

Hernandez Sierra contends the trial court abused its discretion and violated his constitutional right to present a defense by limiting the scope of N.M.'s cross-examination. The State responds, in part, that Hernandez Sierra failed to preserve the issue by declining to testify about the U visa issue. We agree.

The trial court permitted Hernandez Sierra to testify about the purported U visa discussions and even to recall his wife and question her about them. The court thus did not deny him the right to present this evidence to the jury and argue it in closing. The only limitation was its tentative ruling that Hernandez Sierra could not recall N.M. and question her about the purported conversations. The court said it might revise its ruling on whether defense counsel could question N.M. on the issue, but said it needed "a little

11

bit more background about what was happening with the immigration issues." RP

(June 3, 2019) at 27.

Defense counsel knew that his client's wife would deny that the U visa discussions

ever occurred. Defense counsel likely believed that N.M. would testify similarly. Instead

of having two witnesses deny the purported discussions, defense counsel apparently

dropped the subject and opted not to question his client about something the jury likely

would not believe. As the trial court noted, why would N.M. make up such a serious

accusation given there was no evidence of previous animosity between her and her

stepfather and no evidence that her mother was facing deportation proceedings.

"A defendant who does not seek a final ruling on a motion in limine after a court

issues a tentative ruling waives any objection to the exclusion of the evidence." *State v.*

*Riker*, 123 Wn.2d 351, 369, 869 P.2d 43 (1994). In *Riker*, the trial court tentatively

excluded a witness's testimony about a conversation. After the ruling, Riker did not call

the witness nor did she ever seek a final ruling. *Id.*

Although *Riker* addresses waiver of an evidentiary issue, not waiver of a

constitutional issue, we believe the same principle applies in this case. Here, the trial

court did not preclude Hernandez Sierra from testifying about the purported U visa

discussions. Rather, it ruled that he could testify about them and even recall his wife and

cross-examine her about them. The court only tentatively precluded him from recalling

N.M. and asking her about the purported discussions. Our review of the record convinces

us that Hernandez Sierra opted not to pursue this topic because of trial tactics, not

because of the court's tentative evidentiary ruling. Again, Hernandez Sierra was

permitted to testify and cross-examine his wife about these purported discussions and

chose not to.

PROSECUTORIAL MISCONDUCT

Hernandez Sierra contends the prosecutor committed prejudicial misconduct on

multiple occasions in his rebuttal closing argument. For the reasons discussed below, we

disagree.

Prosecutorial misconduct may, in some instances, function to deny defendants their

constitutional right to a fair trial. *State v. Davenport*, 100 Wn.2d 757, 762, 675 P.2d 1213

(1984). In order to prevail, Hernandez Sierra must demonstrate that the prosecutor's

conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442,

258 P.3d 43 (2011). The prejudicial effect of alleged misconduct is determined "by

placing the remarks 'in the context of the total argument, the issues in the case, the

evidence addressed in the argument, and the instructions given to the jury.'" *State v.*

*McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006) (quoting *State v. Brown*, 132 Wn.2d

529, 561, 940 P.2d 546 (1997)).  Improper remarks do not warrant reversal "'if they were invited or provoked by defense counsel and are in reply to his or her acts and statements . . . .'"  *State v. Gauthier*, 189 Wn. App. 30, 38, 354 P.3d 900 (2015) (quoting *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).  We review prosecutorial misconduct claims for abuse of discretion.  *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014).

When the defense fails to object at trial, the error is deemed waived "unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."  *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).  Objections are required to prevent additional impropriety and abuse of the appellate process.  *Id.* at 761.  If a prosecutor makes improper comments in closing, "the defendant must ordinarily move for a mistrial or request a curative instruction."  *State v. Swan*, 114 Wn.2d 613, 661, 790 P.2d 610 (1990).  The defense's failure to do so "strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial."  *Id.*

We address each of Hernandez Sierra's allegations of misconduct in turn.

*Disparaging defense counsel*

Hernandez Sierra first argues the prosecutor committed misconduct by stating that defense counsel had "coached" and was "leading" him the whole time. The State argues these remarks were a fair response to the defense's attack on N.M.'s credibility. We agree with the State.

"Prosecutorial statements that malign defense counsel can severely damage an accused's opportunity to present his or her case and are therefore impermissible." *Lindsay*, 180 Wn.2d at 432; *see also Thorgerson*, 172 Wn.2d at 451 ("It is improper for the prosecutor to disparagingly comment on defense counsel's role or impugn the defense lawyer's integrity."). Examples of maligning comments include calling the defense's presentation of the case "'bogus'" and involving a "'sleight of hand,'" *Thorgerson*, 172 Wn.2d at 451-52, or calling the defense's argument "'a crock.'" *Lindsay*, 180 Wn.2d at 433. These types of statements are "beyond the bounds of acceptable behavior," and constitute "ill-intentioned misconduct." *Thorgerson*, 172 Wn.2d at 452. Statements implying "deception and dishonesty" are generally impermissible. *Lindsay*, 180 Wn.2d at 433.

Here, Hernandez Sierra focused on the inconsistencies in N.M.'s testimony. The prosecutor, in rebuttal, asked the jury to remember the defense's closing argument that

"[N.M.]'s a liar and not to be trusted." RP (June 6, 2019) at 547. He pointed out that counsel was "leading" Hernandez Sierra, who did not tell his story spontaneously from memory. Although suggesting the defense had prepared a script is, when taken alone, improper, it is not grounds for reversal when it is "'invited or provoked by defense counsel'" in reply to his statements. *Gauthier*, 189 Wn. App. at 38 (quoting *Russell*, 125 Wn.2d at 86.)

Hernandez Sierra next argues the prosecutor's comments about defense counsel's "troubling" tone and "unreasonable" arguments were misconduct. We disagree. The defense commented on the oddity of a high school student not understanding the difference between pushing and pulling and referenced a cartoon. The prosecutor found this ridicule of N.M. and the discussion of a fantastical cartoon during her rape trial troubling. Saying so, in his rebuttal closing, was not misconduct. Further, the prosecutor said some of the defendant's arguments were reasonable and many were unreasonable. His comments were far from characterizing the defense's case as "bogus," a "crock," or any other term implying dishonesty and deception.

*"Innocence of children" comment*

Hernandez Sierra next argues the prosecutor's statement that everyone has an abiding belief in the innocence of children mischaracterized the reasonable doubt

16

standard and bolstered N.M.'s credibility. He adds that these statements inflamed the

passions and prejudices of the jury. The State responds that the statement was arguably

improper, but contends Hernandez Sierra waived his challenge by failing to object and

now must prove the statement was so flagrant and ill intentioned that corrective

instructions could not have cured it. We agree.

Prosecutors may not comment on a witness's veracity in their closing arguments if

they intend to incite the passion of the jury. *State v. Stith*, 71 Wn. App. 14, 21, 856 P.2d

415 (1993). They do, however, have "'wide latitude in closing argument to draw

reasonable inferences from the evidence and to express such inferences to the jury.'" *In

re Pers. Restraint of Davis*, 152 Wn.2d 647, 716, 101 P.3d 1 (2004) (quoting *State v.

Stenson*, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997)). Here, the prosecutor tied the

reasonable doubt standard to the abiding belief that all children are innocent—and the

only child in this case was N.M. If all children are innocent, one can presume they would

not lie or exaggerate. We agree that this comment bolstered N.M.'s testimony by

encouraging the jury to believe her because she was an innocent child rather than because

of her credibility as a witness. However, the jury was instructed on the reasonable doubt

standard thoroughly and the court could have clarified this instruction to cure the

17

potential for prejudicing Hernandez Sierra's case. It was not so flagrant and ill intentioned as to warrant reversal.

*"Never trust men again" comment*

Hernandez Sierra next argues the prosecutor's comment that N.M. "will never trust men again" and "will have to live with this every day until she lays her head down on her pillow to die"[6] were improper appeals to the passions and prejudices of the jury. He cites *State v. Pierce*, 169 Wn. App. 533, 555-56, 280 P.3d 1158 (2012), where Division Two of this court held the prosecutor committed misconduct by inviting the jury to imagine themselves in the victims' shoes. There, the prosecutor argued the victims would never in their wildest nightmares have expected to be murdered that day. *Id.* at 555. The court held this was an improper appeal to the jury's passions, "served no purpose but to appeal to the jury's sympathy," and "was not relevant to Pierce's guilt." *Id.* The court continued, "Because the prosecutor focused on how shocking and unexpected the crimes were and invited the jury to imagine themselves in the position of being murdered," the prejudice was incurable. *Id.* at 556.

We do not find the prosecutor's statements here to be as egregious as those in *Pierce*. The State's appeal to the jury's sympathy, which encouraged them to avenge

_____

[6] RP (June 6, 2019) at 556.

18

N.M. for the pain she will suffer for her whole life, was improper. But importantly, Hernandez Sierra did not object to the statements at trial so he must show they were flagrant and ill intentioned. Again, he has not done so.

*Bird fable*

Hernandez Sierra contends the prosecutor's story about the boy trying to trick the old man misrepresented the jury's role, implied its duty was to "solve" the case, and undermined the presumption of his innocence. We disagree.

Our courts have repeatedly held that misrepresenting the role of the jury in criminal trials is misconduct. *See, e.g.*, *Lindsay*, 180 Wn.2d at 437 (telling the jury its job is to "speak the truth" misstated the burden of proof and was improper); *Emery*, 174 Wn.2d at 759-60 (telling the jury to "speak the truth" or "fill in the blank" was improper); *State v. Walker*, 164 Wn. App. 724, 731, 265 P.3d 191 (2011) (telling the jury to fill in the blank suggested defendant had to provide a reason for the jury to find him innocent and was improper), *adhered to on remand*, No. 39420-1-II (unpublished) (Wash. Ct. App. Feb. 25, 2013), http://www.courts.wa.gov/opinions/index.cfm?fa=opinions. showOpinion&filename=394201MAJ; *State v. Anderson*, 153 Wn. App. 417, 429, 220 P.3d 1273 (2009) (telling the jury repeatedly to "declare the truth" was improper).

Here, the prosecutor's statement that the case was in the jury's hands, like the bird

in the boy's hands, was probably more confusing than impermissible. The jury's role is to

determine whether the State has met its burden of proof, which ultimately impacts the

outcome. As such, the story was not as obviously improper as the arguments where a

prosecutor tells the jury to "speak the truth" or "fill in the blank." And again, because

Hernandez Sierra failed to object, he has to prove flagrant misconduct. We do not find he

has proved it here.

INEFFECTIVE ASSISTANCE OF COUNSEL

Hernandez Sierra contends he received ineffective assistance of counsel because

his trial counsel failed to object to prejudicial statements in the prosecutor's rebuttal

closing argument. We disagree.

A claim of ineffective assistance of counsel is one of constitutional magnitude that

we may consider for the first time on appeal. *State v. Kyllo*, 166 Wn.2d 856, 862, 215

P.3d 177 (2009). A defendant claiming ineffective assistance of counsel must show

(1) counsel's performance was deficient and (2) that deficiency prejudiced the

defendant's case. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.

Ed. 2d 674 (1984). Counsel's performance is deficient if it falls below an objective

standard of reasonableness. *Stenson*, 132 Wn.2d at 705. Prejudice exists when, but for

the deficient performance, there is a reasonable probability the outcome would have differed. *Id.* at 705-06. We presume counsel's performance was effective. *Strickland*, 466 U.S. at 689. If counsel's conduct could be considered a legitimate trial tactic, it is not ineffective assistance. *Kyllo*, 166 Wn.2d at 863.

"Lawyers do not commonly object during closing argument 'absent egregious misstatements.'" *Davis*, 152 Wn.2d at 717 (quoting *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993)). Indeed, "[a] decision not to object during summation is within the ride range of permissible professional legal conduct." *Id.* Furthermore, the decision to object to a prosecutor's remarks "fall[s] firmly within the category of strategic or tactical decisions" that cannot be considered ineffective assistance of counsel. *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007). Only in the most egregious circumstances will counsel's failure to object constitute incompetence. *Id.*

Here, Hernandez Sierra's counsel was not deficient. Defense counsel objected to the prosecutor's statements multiple times throughout trial. He advocated zealously for his client from start to finish. His decision not to interrupt the prosecutor's closing argument was likely a trial tactic. Objecting to a statement regarding the innocence of children, right before the jury goes to deliberate, may have appeared to the jurors as an

objection to the statement itself. An objection could have, in that instance, hurt Hernandez Sierra even with a curative instruction.

Because we do not find counsel's failure to object during closing arguments deficient, we need not address the prejudice prong of *Strickland*.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Siddoway, J.